**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| **JOHN M. PITMAN, III,** *et al.* | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **4:16-cv-00179-HCM-DEM** |
| **XCENTRIC VENTURES, LLC,** *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |

<u>**MEMORANDUM IN OPPOSITION TO ANNA RICHTER AND BERT PITMAN'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**</u>

Plaintiffs, John M. Pitman ("Pitman") and Peninsula Plastic Surgery Center, LTD.

("PPS') (collectively the "Plaintiffs"), by counsel, submit the following Memorandum in

Opposition to Anna Richter ("A. Richter") and Bert Pitman's ("B. Pitman") Motion to Dismiss

for Failure to State a Claim. In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

The Plaintiffs detailed and lengthy Complaint outlines various causes of action against

the Defendants. In seeking dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, A. Richter and B. Pitman (collectively the "Defendants") ignore the well-pleaded

facts which entitle the Plaintiffs to relief for, among other things, tortious interference, common

law civil conspiracy and statutory business conspiracy. The Defendants' arguments take a

simplistic view of the facts in this case and apply faulty legal reasoning to reach a flawed

conclusion.

In their Motion to Dismiss, the Defendants assert various arguments against the

Plaintiffs' claims of tortious interference with a business expectancy, common law civil

conspiracy, and statutory business conspiracy under Virginia Code § 18.2-499 and § 18.2-500.

1

Specifically, as to tortious interference with a business expectancy, the Defendants allege that the cause of action was time barred by the one year statute of limitations from defamation. Further, they argue that the Plaintiffs failed to allege a business expectancy with particularity and failed to plead that the Defendants had knowledge of the Plaintiffs' business expectancies. Finally, the Defendants allege that the Plaintiffs failed to plead that the Plaintiffs and the Defendants had a "competitive relationship" and that the Defendants made contact with the Plaintiffs' business expectancies.

Next, the Defendants reason the Plaintiffs' conspiracy counts should fail as being time barred by the statute of limitations. They also argue that the conspiracy claims fail because the Plaintiffs' underlying causes of actions, specifically tortious interference and defamation, were time barred.

The Plaintiffs respond by asserting that under Virginia law, the five-year limitation period for damage to property applies to all of the causes of action. Further, the Plaintiffs properly pled a cause of action for tortious interference with a business expectancy.

## FACTUAL BACKGROUND

Pitman is a medical doctor who is board certified in plastic surgery. (Compl. ¶ 6). For years, he owned and operated a successful plastic surgery clinic in Williamsburg, Virginia known as PPS. (Compl. ¶ 6). Pitman also resides in Williamsburg, Virginia. (Compl. ¶ 6). When Pitman is not assisting patients, he serves as a reservist member of the U.S. Army Medical Corps. (Compl ¶ 6).

Pitman and Defendant Tracey A. Richter were married on August 14, 1988. Their son, B. Pitman was born approximately two years later. (Compl. ¶ 26). The marriage was volatile and resulted in quarrelsome divorce proceedings which lasted longer than the marriage. (Compl. ¶

26). During the divorce proceedings, the parties exchanged allegations of criminal conduct towards one another. Ultimately, however, the parties were awarded joint legal custody and B. Pitman, with Tracey Richter having primary physical custody and Pitman having visitation rights. (Compl. ¶ 26).

After the divorce, Tracey Richter remarried and moved to Early, Iowa. (Compl. ¶¶ 27-28). While in Iowa, Tracey Richter murdered Dustin Wehde ("Wehde"). (Compl. ¶ 30). For nearly 10 years Tracey Richter avoided prosecution for her crimes. In 2011, however, she was arrested and charged with Wehde's murder. (Compl. ¶ 41). Prior to her arrest, Tracey Richter attempted to implicate Pitman in Wehde's murder. (Compl. ¶ 31 – 32).

Tracey Richter was eventually tried and convicted for Wehde's murder. (Compl. 47 – 49). Due to the false allegations that he was involved in Wehde's murder and given his past relationship with Tracey Richter, Pitman testified during her murder trial. (Compl. ¶ 47). This angered Tracey Richter and after receiving a life sentence she enlisted others to assist her in overturning her conviction. (Compl. ¶ 51). This included Magedson, B. Pitman, A. Richter and Darren Meade ("Meade"). Part of her plan was to attack Pitman through an internet smear campaign in order to convince him to recant his testimony. (Compl. ¶ 51). Xcentric and Magedson believed assisting Tracey Richter in her scheme would be profitable. (Compl. ¶ 62). A. Richter and B. Pitman believed they could leverage the internet harassment to convince Pitman to recant his testimony.

An alliance was soon formed. Xcentric and Magedson were attractive partners for Tracey Richter because of their knowledge of the internet and operation of www.ripoffreport.com (the "Ripoff Report"). The Ripoff Report is a highly visible and trafficked website with millions of visitors per week. (Compl. ¶ 18). The website permits users

to post defamatory and misleading information without consequences which appear prominently in search engine results. (Compl. ¶21). And Tracey Richter was an attractive partner to the Xcentric and Magedson because she advised them that the Plaintiffs were financially successful. (Compl. ¶ 89).

Tracey Richter used her son, who was living in Virginia at the time, to collect information on Pitman. (Compl. ¶¶ 51-57). The plan was to post false and misleading about the Plaintiffs on the Ripoff Report. (Compl. ¶ 51). B. Pitman contacted employees of PPS, Pitman's girlfriend and others in Virginia to secure information regarding the Plaintiffs. (Compl. ¶¶ 52 – 57). Much of this information was provided to a paid employee of Xcentric- Meade- who posted it on the Ripoff Report. (Compl. ¶ 52).

Tracey Richter's mother, Anna Richter, was also sending information about the Plaintiffs to Meade and Magedson. (Compl. ¶ 60). The purpose of these communications was to develop leverage on the Plaintiffs so Xcentric could charge them substantial fees to have the false information removed from the Ripoff Report. (Compl. ¶¶ 61-62). Or, in the alternative, to have Pitman recant his trial testimony in exchange for removal of the posts.

Xcentric, Meade and Magedson published false accusations on the Ripoff Report concerning the Plaintiffs which accused the Pitman of theft, perjury and child molestation. (Compl. ¶¶ 69 - 74). Once the posts were online, Xcentric and Magedson's agents contacted the Plaintiffs in Virginia. (Compl. ¶ 91). An employee of Xcentric called the Plaintiffs in reference to the posts on the Ripoff Report and requested that the Plaintiffs pay $10,000.00 to have the posts removed. Xcentric's employees also requested a monthly payment to ensure that the posts would not reappear. (Compl. ¶ 92). This comported with Xcentric's business model. At the

request of Magedson and Xcentric, employees of Xcentric made multiple attempts to secure money from the Plaintiffs. (Compl. ¶ 94).

The posts and the extortion attempts were done with full knowledge of the Plaintiffs' business model. Specifically, the Defendants knew about the business expectancies of the Plaintiffs and knew that the Plaintiffs had potential for future clients. (Compl. ¶ 89). At the time the posts were made, Defendants knew they would appear prominently on search engines and damage the Plaintiffs' business- that was the whole goal of the posts in the first place.

## PROCEDURAL BACKGROUND

By Opinion and Order dated March 22, 2017, the Court clarified and addressed various procedural issues among the parties. At that time, the Court also permitted the Defendants to file responsive motions in this case. On March 31, 2017, the Defendants moved to Dismiss for Failure to State Claim. [Dkt. No. 59]. Plaintiffs now oppose the Motion to Dismiss for Failure to State a Claim.

## ARGUMENTS & AUTHORITIES

### I. STANDARD OF REVIEW

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (*quoting Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99 (1957); *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

In evaluating the sufficiency of a pleading, the cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), provide guidance. When reviewing a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, a court must determine whether the factual allegations contained in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969. As the Fourth Circuit has explained, "to withstand a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) (*quoting Twombly*, 550 U.S. at 570)).

Satisfying this "context-specific" test does not require "detailed factual allegations." *Iqbal*, 129 S.Ct. at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.* at 1950.

## II. PLAINTIFFS HAVE STATED A PROPER CLAIM FOR TORTIOUS INTERFERENCE, COMMON LAW CIVIL CONSPIRACY AND STATUTORY BUSINESS CONSPIRACY AND THE XCENTRIC DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED

### a. Plaintiffs Have Stated a Viable Claim for Tortious Interference with a Business Expectancy

#### i. Tortious Interference With A Business Expectancy Is An Independent Tort Recognized Under The Common Law of Virginia

To state a cause of action against the Defendants for tortious interference with a prospective contract, Plaintiffs must plead: (1) the existence of a business relationship or

expectancy; (2) Defendants' knowledge of the relationship or expectancy; (3) a reasonable certainty that absent Defendants' intentional misconduct, the Plaintiffs would have continued in the relationship or realized the expectancy; and (4) resultant damage to the Plaintiffs. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97 (1985); *Glass v. Glass*, 228 Va. 39, 51-52, 321 S.E.2d 69 (1984). The cause of action must be based on contact that either induces or causes a third party not to enter into a prospective contract with the plaintiffs or prevents the plaintiffs from entering into a contract. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592 (1984).

However, if a contract is terminable at will or involves only a contract or business expectancy, a plaintiff, in order to present a *prima facie* case of tortious interference, must allege and prove not only an intentional interference . . .but also that the defendant employed improper methods." *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 216, 754 S.E.2d 313 (2014); *see also Priority Auto Group, Inc. v. Ford Motor Company*, 757 F.3d 137, 143 (4th Cir. 2014).

The Defendants argue that the cause of action for defamation, its elements, and its statute of limitations are applicable to a separate tort. They are wrong. As more fully discussed below, tortious interference with a business expectancy is its own tort and is not dependent on the elements of defamation. The Plaintiffs' Complaint alleged all of the elements of the cause of action. Thus, the longer statute of limitations for tortious interference applies to the cause of action and Plaintiffs' claims survive.

### ii. Under Virginia Law, The Statute Of Limitations For Tortious Interference Is Five Years

The Defendants' arguments completely omit discussion of *Dunlap v. Cottman Trasmission Systems, LLC*, the seminal case from the Supreme Court of Virginia that directly

addressed the statute of limitations for tortious interference.  In *Dunlap,* the Supreme Court of

Virginia noted "one of the elements of a claim for tortious interference with either a contract or

business expectancy requires intentional interference inducing or causing a breach or termination

of the contractual relationship or business expectancy."  *Id.* at 221 (*citing Chaves*, 230 Va. at

120, 335 S.E.2d at 102)).  Such interference is directed at and injures a property right, i.e., the

right to performance of a contract and to reap profits and benefits not only from the contract but

also from expected future contracts or otherwise advantageous business relationships.  *Id.* (*citing*

*Pure Milk Ass'n v. Kraft Foods Co.*, 8 Ill. App. 2d 102, 130 N.E.2d 765, 772 (Ill. App. Ct. 1955)

("'[T]he right to perform a contract and to reap the profits resulting from such performance . . .

are property rights which entitle each party to protection, and to seek compensation by action in

tort for any injuries to such contract.'"); *Johnson v. Gustafson*, 201 Minn. 629, 277 N.W. 252,

254 (Minn. 1938) ("[T]he interest in a contract being a property right, a party thereto has a right

of action against persons who are by their conduct substantially interfering with the performance

thereof."); *Barr v. Essex Trades Council*, 53 N.J. Eq. 101, 30 A. 881, 885 (N.J. Ch. 1894) ("A

man's business is [his] property."); *Carolina Overall Corp. v. East Linen Supply, Inc.*, 8 N.C.

App. 528, 174 S.E.2d 659, 661 (N.C. Ct. App. 1970) ("The theory of the doctrine which permits

recovery for the tortious interference with a contract is that the right to the performance of a

contract and to reap the profits therefrom are property rights which entitle each party to

protection and to seek compensation by action in court for an injury to such contract.")).

Therefore, the Court held that "the five-year statute of limitations in Code § 8.01-243(B)

applies to both tortious interference with contract and tortious interference with business

expectancy." *Dunlap*, 287 Va. at 222.

Based on the holding in *Dunlap*, the Plaintiffs' claim for tortious interference with a business expectancy is subject to a five-year limitation period. Since all the tortious acts committed by the Defendants occurred between 2012 and the present, the Plaintiffs' claim for tortious interference is not time barred since suit was filed in October, 2016.

### iii. Plaintiffs Properly Alleged Multiple "Improper Methods"

The Defendants' arguments focus entirely on the Plaintiffs alleged defamation claims against the Defendants and argue that this is insufficient to constitute an improper method for tortious interference. The Supreme Court of Virginia has held that "[m]ethods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Duggin v. Adams*, 234 Va. 221, 227, 360 S.E.2d 832, 836, 4 Va. Law Rep. 820 (1987). Improper methods may include "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559 (2011).

The Defendants ignore the fact that the Plaintiffs' Complaint alleges multiple improper methods- aside from defamation. Specifically, the Plaintiffs alleged "improper methods" "including, but not limited to, defamation, extortion, attempted extortion, conspiracy to commit extortion, witness retaliation and witness tampering." (Compl. ¶ 109). Each of these is supported by sufficient factual allegations. Thus, since other "improper methods" were alleged, the Xcentric Defendants' argument that the statute of limitations for defamation should apply must fail. The proper limitation period is five years, as discussed above.

Further support for the fact that the statute of limitations for an underlying "improper method" should not control the limitation period for tortious interference is the fact that courts have held that the "improper method" does not have to rise to the level of a crime or tort. *Stamathis v. Flying J, Inc.*, 2002 U.S. Dist. LEXIS 12398, 19-20 (W.D. Va. July 9, 2002) ("there is evidence from which a jury could conclude that defendants used improper methods-- defamation, malicious prosecution, and misrepresentations that might not rise to the level of defamation--to interfere with Stamathis' employment"); *see also Douty v. Irwin Mortg. Corp.*, 70 F. Supp. 2d 626 (E.D. Va. 1999) (allegations that defendants provided false and misleading information about her termination and how she serviced her loans are sufficient instances of use of improper methods to satisfy this element).

In the case of an "improper method" which did not rise to the level a tort or a crime, there would be no statute of limitations, as the cause of action would not have accrued. Therefore, the underlying "improper method" clearly should not control a claim for tortious interference, as the Defendants assert, and their argument fails.

### iv. Plaintiffs Alleged A Plausible And Specific Future Business Expectancy

The Defendants also assert that the Plaintiffs failed to plead a specific lost contract or business expectancy. This is incorrect. The Plaintiffs alleged Defendants Tracey Richter, B. Pitman, A. Richter, and Meade "began collectively gathering information on Pitman and PPS, PPS' employees, PPS' patients and Pitman's romantic partners." (Compl. ¶ 55). Further, the Plaintiffs alleged that A. Richter "began sending Meade, Magedson and Xcentric weekly packages of documents concerning Richter and her trial…these documents included information that B. Pitman and A. Richter had gathered regarding the Plaintiffs." (Compl. ¶ 60). Plaintiffs

alleged the Defendants "knew Pitman was a successful plastic surgeon and had substantial income through his business, PPS." (Compl. ¶ 61).

Importantly, Plaintiffs have alleged detailed facts about Pitman and his business dealings, including the fact that the Plaintiffs' financial success depended on maintaining surgery patients in a competitive industry. (Compl. ¶¶ 85-87). It is also alleged that the Plaintiffs were successful in the plastic surgery industry and that past indication of success was a predictor of future business and clientele. (Compl. ¶ 88). Again, the Defendants, including Bert Pitman and Anna Richter, knew about this success and that Plaintiffs would have future clients. (Compl. ¶ 89).

This is critical as several courts have held that "[t]he defendant must have actual knowledge of the existence of the business relationship or knowledge of facts that, upon reasonable inquiry, should lead to disclosure of the existence of the contract or potential business relationship." *Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54, 62 (Va. Cir. Ct. 1997) (citing Restatement (2d) of Torts, § 766, Comment I (1977); *Meadow Ltd. Partnership v. Heritage Savings & Loan*, 639 F. Supp. 643, 651 (E.D. Va. 1986)).

Again, the Plaintiffs alleged the Defendants had actual knowledge of the Plaintiffs' business expectancies. (Compl. ¶ 60). Each Defendant was actively involved in the conspiracy to obtain information about the Plaintiffs and their business practices. In fact, Defendant B. Pitman was actively gathering intelligence on the Plaintiffs from within Virginia and providing this information to the other Defendants. (Compl. ¶¶ 53-60). Tracey Richter was also familiar with the Plaintiffs' finances and business interests because she was previously married to Pitman. This information was passed along to the other Defendants. (Compl. ¶ 89). Indeed, this was the point of the tortious actions by Defendants – to destroy Pitman's business by posting false and

salacious information on websites and optimizing these sites during potential patients' Google

searches, which in turn would (and did) cause surgery patients to avoid his business.

This background is important and bolsters the allegations that the Plaintiffs suffered

"actual loss of patients who read the postings…loss of current PPS patients…loss of future PPS

patients…loss of expected future income…loss of PPS' goodwill with its patients, the loss of

good will in the plastic surgery profession, and the loss of goodwill PPS and Pitman worked to

create with its patients and regulatory authorities." (Compl. ¶ 99). The Plaintiffs alleged and

intend to produce evidence of actual lost clients as a result of the Defendants' tortious

interference and seek the opportunity to do so.

Regardless of the Xcentric Defendants' interpretation of this pleading requirement, this

Court has taken a more relaxed view of this alleged pleading requirement in the past and has

permitted plaintiffs to conduct discovery regarding lost business expectancies. *See, e.g.,*

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 2009 U.S. Dist. LEXIS 49419

(E.D. Va. June 12, 2009) (Plaintiff argues that, from this evidence, the fact-finder could infer a

causal relation between Defendant's misconduct and Plaintiff's lost customers…Plaintiff has not,

however, submitted any testimony from current or former transient customers regarding whether

or how Defendant's alleged misrepresentations affected their decisions to patronize the Center

instead of Signature). Should the Court be inclined to apply the stringent and incorrect standard

argued by the Xcentric Defendants, the Plaintiffs' claim should still proceed through discovery

and can be addressed at the summary judgment stage of this litigation.

### v. Plaintiffs Are Not Required To Plead A Competitive Relationship

Despite assertions to the contrary, there is currently no requirement that the Plaintiffs

allege a competitive relationship between the Plaintiffs and the Defendants. A line of cases from

this Court have found insufficient tortious interference claims where there was no competitive relationship between the parties. *See, e.g., 17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584 (E.D. Va. 2005); *Adeptech Sys., Inc. v. Federal Home Loan Mortg. Corp.*, No. 1:11CV383 LMB/JFA, 2011 U.S. Dist. LEXIS 148747 (E.D. Va. Dec. 28, 2011); *Whitaker v. Sheild*, Civil Action No. 4:05cv130, 2006 U.S. Dist. LEXIS 101055 (E.D. Va. May 3, 2006); *Wenzel v. Knight*, No. 3:14-cv-432, 2015 U.S. Dist. LEXIS 70536 (E.D. Va. June 1, 2015); *Cox v. MAG Mutual Insurance Company*, Civil No. 3:14-cv-377-JAG, 2015 U.S. Dist. LEXIS 46502 (E.D. Va. Apr. 9, 2015); *see also* Woody v. Carter, 77 Va. Cir. 198 (Va. Cir. 2008).

Plaintiffs concede that in *17th St. Assoc.* this court noted "[t]he reason that the tort of intentional interference with a business expectancy always involves a competitive relationship and allegations of direct contact with the source of the expectancy are self-evident: they provide prima facie evidence of a motive to interfere and indicate that the interference actually took place." 373 F. Supp. 2d at 601.

However, more recent case law has held that a competitive relationship is not necessary. For example, in *Livia Props., LLC v. Jones Lang Lasalle Ams., Inc.*, 2015 U.S. Dist. LEXIS 103987, 15-16 (W.D. Va. Aug. 7, 2015), the court found that while "tortious interference claims usually arise between competitors, the Virginia Supreme Court has never stated that a competitive relationship between the parties is a prerequisite to a tortious interference claim like that alleged herein." (*citing Foster v. Wintergreen Real Estate Co.*, 81 Va. Cir. 353 (Va. Cir. 2010) (overruling demurrer on the ground that a competitive relationship between the party interfered with and the interferor because that element had not been adopted by the Supreme Court of Virginia)). The *Livia* court went on to reason, "[a]s a court in Connecticut explained, the reasons for this are obvious:

> To hold a defendant who has tortiously interfered with another's business relations free from liability solely because the defendant has not injured a competitor is contrary to the law. . . . The lack of a competitive relationship can in no way justify unwarranted interference with another's business relations. Furthermore, a plaintiff's injuries in such a situation are no less real because they are caused by a noncompetitor."

*Id.* (*citing Conrad v. Erickson*, 41 Conn. App. 243, 246, 675 A.2d 906 (Conn. 1996)). Further, a recent case from the Eastern District interpreting the current state of Virginia law noted:

> the Plaintiff's legal argument with respect to the tortious interference claims has not changed—they challenged then and now the Court's adoption of a fifth unstated element to the prima facie case: a competitive relationship between the party interfered with and the interferor…[a]t the hearing on the motion to dismiss, Plaintiffs' counsel zealously urged his position based on his interpretation of Virginia caselaw…[t]he Supreme Court of Virginia has subsequently strengthened this interpretation with its somewhat cryptic invitation to take up the issue at a later date...[i]mportantly, it did not reject his interpretation.

*AdvanFort Co. v. Int'l Registries, Inc.*, 2015 U.S. Dist. LEXIS 90912 (E.D. Va. July 13, 2015) (*citing Schaecher v. Bouffault*, 290 Va. 83 (2015)).

There is no pleading requirement for competitive relationship in Virginia. The most recent case law on the subject suggests a back track from the "fifth unofficial element." As the courts have reasoned above, it is inexplicable that "interferors" can escape liability for tortious interference simply because they are not in the same business field as a victim. Therefore, the Plaintiffs argue that this Court should adopt the reasoning of the courts in *Livia* and *AdvanFort* and not require a competitive relationship between the Plaintiffs and the Defendants.

However, if this Court requires an allegation of a competitive relationship between the Plaintiffs and each of the Defendants- one can be established. In *17th Street Associates*, the district court explained, "[t]he reason that the tort of intentional interference with a business expectancy always involves a competitive relationship and allegations of direct contact with the source of the expectancy are self-evident: *they provide prima facie evidence of a motive to*

*interfere and indicate that the interference actually took place.*" 373 F. Supp. 2d at 601 (emphasis added).

In this case, each of the Defendants has an established reason for interfering with the Plaintiffs' business interests. Defendants Tracy Richter, B. Pitman, A. Richter, along with Meade, Magedson, and Xcentric are attempting to secure Richter's freedom by forcing Pitman to recant his murder trial testimony. Further, Defendants Meade, Magedson, and Xcentric have attempted to extort money from the Plaintiffs. Therefore, the indicia of a competitive relationship, even if it is not a business relationship, exist in this case. The Plaintiffs have alleged the motive to interfere on the part of each of the Defendants. Therefore, the Plaintiffs have satisfied the "fifth unofficial element" of tortious interference.

### vi. Each Defendant Made Indirect Contact With The Plaintiffs' Business Expectancies

Through the collective actions of the Defendants and their use of the Ripoff Report website, there is no doubt that each of the Defendants made indirect contact with the Plaintiffs' business expectancies. "[L]ike the existence of a competitive relationship between the plaintiff and the defendant, contact by the defendant with the source of the plaintiff's business expectancy, *direct or indirect*, is a de facto *prima facie* element of a claim for tortious interference with a business expectancy." *Jeffrey J. Nelson & Assocs. v. LePore*, 2012 U.S. Dist. LEXIS 93097 (E.D. Va. July 5, 2012) (*citing 17th Street Associates*, 373 F. Supp. 2d at 601)).

As alleged in the Complaint, the Defendants began collectively gathering information on Pitman and PPS, PPS employees, PPS' patients, and Pitman's romantic partners. (Compl. ¶55). They provided the information to Defendants Magedson and Xcentric to be used for posts on the Ripoff Report. (Compl ¶ 59). As alleged in the Complaint, the entire purpose of the Ripoff Report website is to reach the consumers of businesses. (Compl. ¶¶ 16-25). Plaintiffs alleged

and will produce evidence that these posts reached current and prospective patients of the Plaintiffs. Therefore, each of the Defendants has made at least indirect contact with the Plaintiffs' business expectancy.

### b. Plaintiffs Have Stated A Claim For Statutory Business Conspiracy

### i. The Applicable Statute Of Limitations Is 5 Years

The Defendants' statute of limitations arguments completely miss the mark by arguing that the applicable statute of limitation is two years. The weight of case law, including the Virginia Supreme Court in *Dunlap,* hold that the statute of limitations for statutory business conspiracy is five years.

As far back as 1976, courts in the Eastern District of Virginia have held that a five-year statute of limitations is applicable to business conspiracy claims. Specifically, this court has reasoned "that an action brought under Sections 18.2-499 and 18.2-500 of the Code of Virginia…is subject to the five year limitation…[t]his statutory action provides a remedy for wrongful conduct directed to the business…[a]n injury to one's business is clearly an injury to one's property interest." *Federated Graphics Cos. v. Napotnik*, 424 F. Supp. 291, 293 (E.D. Va. 1976) (*citing Standard Drug Co. v. General Electric*, 202 Va. 367, 117 S.E.2d 289, 296 (1961) (good will held to be a property interest); *Worrie v. Boze*, 198 Va. 533, 535, 95 S.E.2d 192, 196 (1956) (conspiracy to wrongfully solicit business customers held to be a wrong to property); *Blackwelder v. Millman*, 522 F.2d 766, 774 (4th Cir. 1975) (loss of business profits treated as an injury to property under Virginia law).

Virginia courts continue to recognize statutory business conspiracy as an injury to business interests and thus property. *See Jaggars v. Sandy Spring Bank*, 2015 U.S. Dist. LEXIS 48792, 9-10 (W.D. Va. Apr. 14, 2015) (*citing Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir.

1985) ("In an unbroken line of federal district cases, beginning with Judge Mehrige's opinion in *Federated Graphics Companies, Inc. v. Napotnik*, 424 F. Supp. 291, 293-4 (E.D. Va. 1976) and continuing as late as *Nationwide Mutual Fire Insurance Co. v. Jones*, 577 F. Supp. 968, 969-70 (W.D. Va. 1984), the federal district courts in Virginia have consistently held that a right of action is 'afforded [under these statutes] only when malicious conduct is directed at one's business, not one's person,' and that the statute 'focuses upon conduct directed at property, i.e., one's business' and applies only to 'conspiracies resulting in business-related damages.'")). Further, the Supreme Court of Virginia has clarified that these statutes "apply to business and property interests, not to personal or employment interests." *Id.* (*citing Andrews v. Ring*, 266 Va. 311, 585 S.E.2d 780, 784 (2003)).

The Defendants also claim that the holding of *Cherokee Corp. v. Chicago Title Ins. Corp.*, 35 Va. Cir. 19 (Va. Cir. Ct. 1994) supports her argument. However, the *Cherokee Corp.* court plainly acknowledged that "[a]ccording to the *Federated Graphics* court, all actions brought under §§ 18.2-499 and 18.2-500 concern injuries to property and are therefore governed by a five-year statute of limitations…Thus, the Court finds that the Plaintiffs' second claim for relief is not time barred." *Id.* The same is true here.

### ii. The Supreme Court of Virginia Acknowledged A Five-Year Statute Of Limitations For Statutory Business Conspiracy In *Dunlap*

The Defendants' failure to acknowledge the Supreme Court of Virginia's analysis in *Dunlap* dooms their arguments. *Dunlap* involved with two certified questions from the Fourth Circuit. First, whether tortious interference could qualify as a requisite unlawful act for a statutory business conspiracy. Second, the court addressed the statute of limitations for tortious interference. As noted above, the Court determined that it was five years. However, prior to the case being appealed to the Fourth Circuit and the questions being certified, the Eastern District

17

Court found that the Plaintiff's tortious interference claim was time barred by a two-year statute of limitations. *Dunlap v. Cottman Transmission Sys., LLC*, 2011 U.S. Dist. LEXIS 158097 (E.D. Va. Nov. 4, 2011). Obviously, based upon the facts in *Dunlap*, more than two years had passed between the alleged harm and suit being filed. Thus, there would have been no point in the Supreme Court of Virginia addressing whether tortious interference was an acceptable unlawful act for statutory business conspiracy if the statute of limitations for statutory business conspiracy was only two years. The claim would have been time barred. Therefore, it is clear that the Supreme Court of Virginia has accepted a five-year statute of limitations for statutory business conspiracy.

### iii. Plaintiffs Properly Alleged A Cause Of Action For Statutory Business Conspiracy

To recover in an action under Virginia Code §§ 18.2-499-500, a plaintiff must establish: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984). It is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, i.e., ill-will, hatred, or spite directed toward the plaintiff. *Commercial Bus. Sys., Inc. v. BellSouth Servs.*, 249 Va. 39, 47, 453 S.E.2d 261, 266-67 (1995). Rather, a plaintiff must establish by clear and convincing evidence only that the conspirators acted with legal malice, i.e., "intentionally, purposely, and without lawful justification." *Id.* at 47; accord *Northern Va. Real Estate v. Martins*, 283 Va. 86, 110, 720 S.E.2d 121, 133 (2012); *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 290, 576 S.E.2d 752, 757 (2003); *Simmons v. Miller*, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001).

It has been noted that because there can be no conspiracy to do an act that the law allows, "an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an

unlawful purpose" to survive demurrer. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). In other words, actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious. *See Beck v. Prupis*, 529 U.S. 494, 501, 120 S. Ct. 1608 (2000).

Beyond the statute of limitations argument, the Defendant's only other argument for dismissal for the business conspiracy claim is that the Plaintiffs failed to allege an unlawful act. However, the Plaintiffs have alleged multiple unlawful acts in support of their conspiracy claims. Specifically, the Plaintiffs alleged the Defendants defamed, extorted, tampered with, and retaliated against the Plaintiffs. (Compl. ¶ 117). This satisfies any pleading requirement. Also, and in spite of the Defendants' arguments, the Plaintiffs claim of tortious interference, as articulated *Dunlap*, is an underlying unlawful act- as which mandates denial of the Motion to Dismiss.

### iv.  Plaintiffs' Claim For Statutory Business Conspiracy Survives Regardless Of Any Claim For Defamation

Various courts have held that the statute of limitations for a personal suit for defamation does not apply for a claim under Virginia Code §§ 18.2-499-500. For example, in *Moore v. Allied Chemical Corp.*, the plaintiff alleged that the defendants "did associate, agree, mutually undertake or concert together for the purpose of maliciously and willfully injuring him in his reputation, trade, or business, in violation of Va. Code Ann. § 18.2-499." 480 F. Supp 364, 373 (E.D. Va. 1979). The defendants argued that the count was actually a personal suit for defamation subject to the one-year period, and thus time-barred." *Id*. at 374. Relying upon *Graphics Companies*, 424 F. Supp. 291, the court stated that it would "[o]rdinarily…disagree" with the defendants' argument. *Id.* at 373. The court went on to reason that "[a]lthough the

alleged conduct might fairly be characterized as an action personal in nature (defamation and malicious prosecution), Section 18.2-499 'is applicable to any malicious conduct which injures a business'…[t]he statute does not restrict its coverage to corporations; by speaking of injury to 'another in his reputation, trade, business or profession,' Section 18.2-499 also protects individuals who own and operate a business." *Id.* at 374. Ultimately, the court found that while the plaintiff, a co-owner and active participant in the management of his business, would have fallen within the coverage of the statute, his testimony during his deposition indicated that his action was for personal defamation. *Id.*

Next, in *Marmott v. Maryland Lumber Co.*, the Fourth Circuit addressed § 18.2-499 and the traditional one year statute of limitations for defamation. 807 F.2d 1180 (4th Cir. 1986). The holdings of the district court, prior to the appeal are relevant because they closely mirror the Defendants' argument:

> the district court held that Marmott's claims based on common-law interference with business relations and defamation were barred by Maryland's one-year statute of limitations applicable to actions for libel and slander. The court also rejected a claim based on § 18.2-499 of the Virginia Code, which provides that a civil action may be brought for conspiracy to interfere with a business…*the court held that the conspiracy claim was time-barred, because the underlying cause of action was the same one barred by the one-year limitations period for libel and slander.* The court reasoned that the form of action should not change the relevant limitations period and that the one-year period should control.

*Id.* (emphasis added). However, on appeal, the Fourth Circuit noted that "the district court wrongly applied a one-year limitations period to § 18.2-499," as "[t]hat section has previously been held to have a five-year statute of limitations, because it creates an action that would survive a plaintiff's death at common law." *Id.* (*citing Federated Graphics*, 424 F. Supp. at 294). The court further reasoned that "[w]hen a special statutory cause of action and a common-law

cause of action co-exist, and the statutory cause of action has a longer limitations period, the statutory period should prevail. *Id.* (citing Am Jur. 2d, Limitations of Actions § 62, n.2 (1970)).

Finally, the Fairfax County Circuit Court addressed the issue in *Holden v. Crippen*, 32 Va. Cir. 67 (Va. Cir. Ct. 1993). Despite having previously dismissed the plaintiff's cases for malicious prosecution and defamation as time barred, the court went on to find that the plaintiff's claim under Virginia Code § 18.499 could survive. *Id.* In *Holden*, the plaintiff was an attorney and the court reasoned that careers in professions "are easily tarnished by attacks on character and competency, even if untrue." *Id.* The court went on to find that "by falsely disparaging the quality of plaintiff's legal advice, her stock in trade, defendants have conspired to injure plaintiff in the practice of her profession." *Id.* Further, "[d]espite the fact that her personal reputation may have been equally damaged by defendants' statements, it is the harm to plaintiff's law practice, the inability of her business to retain new corporate clients, for which she seeks relief." *Id.* Plainly, the Defendants' arguments as to the Plaintiffs' statutory business conspiracy count must fail as a matter of law.

### c. Plaintiffs Alleged A Viable Claim for Common Law Civil Conspiracy

#### i. Plaintiffs Have Alleged Sufficient Unlawful Acts Based Upon The Combined Actions Of The Defendants

Despite the Xcentric Defendants' unsupported argument, Plaintiffs have alleged unlawful acts aside from defamation. Specifically, the Plaintiffs alleged the Defendants defamed, extorted, tampered with, and retaliated against the Plaintiffs. (Compl. ¶ 117). Further, based on *Dunlap*, Plaintiffs' claim of tortious interference was an underlying unlawful act.

#### ii. The Applicable Statute Of Limitations Is Five-Years

Similar to the reasoning applied above to statutory business conspiracy, the statute of limitations for common law conspiracy is determined based on an examination of the underlying

cause of action.  *Espejo v. George Mason Mortg., LLC*, 2010 U.S. Dist. LEXIS 8190 (E.D. Va. Feb. 1, 2010) (*citing Cherokee Corp. v. Chicago Title Ins. Corp.*, 35 Va. Cir. 19, 29 (Warren County, 1994)).

In *Cherokee Corp*., the Warren County Circuit Court stated that the primary issue "in determining the appropriate statute of limitations is whether the action is personal or whether the action concerns property: if otherwise unspecified, the statute of limitations is one year if the action is personal in nature, but is five years if the action concerns property."  35 Va. Cir. at 31.

In this case, there is no doubt that the action "concerns property."  The most obvious support for that contention is that one of the Plaintiffs, PPS, is a business and therefore incapable of suffering a personal harm.  As the owner and the primary medical doctor of PPS, Pitman has alleged damages to his business as a result of a harmful conspiracy perpetuated by the Defendants.  Therefore, this Court should find that the common law conspiracy action concerns the Plaintiffs' property interests. A five-year statute of limitations applies and the Xcentric Defendant's Motion to Dismiss fails.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion to Dismiss for Failure to State a Claim.  Should the Court find it necessary, the Plaintiffs would request leave to amend, jurisdictional discovery, or other relief to which the Court deems necessary and proper to permit the Plaintiffs to assert their claims as justice so demands.

Respectfully submitted,

JOHN M. PITMAN, III, and
PENINSULA PLASTIC SURGERY
CENTER, LTD


By: /s/     Aaron Balla Houchens
            Of Counsel

Aaron B. Houchens, Esq. (VSB #80489)
STANLEY & HOUCHENS, LLC
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
540-721-6028 (telephone)
540-721-6405 (facsimile)
ahouchens@shg-law.com

Stephen M. Smith, Esq. (VSB #14362)
Seth D. Scott, Esq. (VSB #80907)
David B. Holt, Esq. (VSB #65564)
THE SMITH LAW CENTER
2100 Kecoughtan Road
Hampton, Virginia 23661
757-244-7000 (telephone)
757-245-7740 (facsimile)
ssmith@braininjurylawcenter.com
sscott@attorneys4injured.com
dholt@ attorneys4injured.com

*Counsel for Plaintiffs John M. Pitman, III and Peninsula Plastic Surgery Center, LTD.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2017, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

David A. Warrington, Esq.
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Phone: (703) 647-5926
Fax: (703) 647-5966
david.warrington@leclairryan.com
*Counsel for Defendant Xcentric Ventures, LLC and Edward Magedson*

Jesse R. Binnall, Esq.
Louise T. Gitcheva, Esq.
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, Virginia 22314
Tel: (703) 888-1930
jbinnall@harveybinnall.com
lgitcheva@harveybinnall.com
*Counsel for Defendants Anna Richter, Bert Pitman and Tracey Richter*

And I hereby certify that I will mail the document by U.S. mail to the following non-

filing users:

Thomas K. Norment, Esq.
Kaufman & Canoles
4801 Courthouse Street, Suite 300
Williamsburg, Virginia 23188
(757) 259-3835 (Tel.)
(888) 360-9092 (Fax)
tknorment@kaufcan.com
(also provided with a copy of the NEF accompanying this filing)
*Counsel for Defendants Anna Richter and Bert Pitman*

/s/    Aaron Balla Houchens
Aaron B. Houchens, Esq. (VSB #80489)
STANLEY & HOUCHENS, LLC
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
540-721-6028 (telephone)
540-721-6405 (facsimile)
ahouchens@shg-law.com