IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| JOHN M. PITMAN, III, *et al.*, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) Civil Action No.: 4:16-cv-179 |
| | ) |
| XCENTRIC VENTURES, LLC., *et al.*, | ) |
| | ) |
| *Defendants.* | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION OF DEFENDANTS
EDWARD MAGEDSON'S AND XCENTRIC VENTURES, LLC'S
MOTION TO DISMISS**

Plaintiffs, John M. Pitman ("Pitman") and Peninsula Plastic Surgery Center, LTD. ("PPS') (collectively the "Plaintiffs"), by counsel, submit the following Memorandum in Opposition to Edward Magedon and Xcentric Venutres, LLC's Motion to Dismiss for Failure to State a Claim. In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

Give the litigation to date, the Court is familiar with the factual allegations and procedural posture of this case. Accordingly, the Plaintiffs will dispense with a recitation of the factual allegations in the spirit of judicial economy.

**I. THE PLAINTIFF'S HAVE SUFFICIENTLY PLED SPECIFIC BUSINESS EXPECTANCIES WHICH MANDATES THAT THE TORTIOUS INTERFERENCE CLAIM SURVIVE THE DEFENDANTS' MOTION TO DISMISS**

Edward Magedson and Xcentric Ventures, LLC (collectively the "Defendants") argue that the Plaintiffs failed to plead specific business expectancies and therefore the Plaintiff's tortious interference claim should be dismissed. The Defendants arguments, however, set forth a heightened pleading standard which does not apply and the Plaintiffs are not required to identify

specific patients in the Amended Complaint to survive a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. *Standard for Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the Complaint as true and "draw all reasonable inferences in favor of the [nonmoving party]." *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

### B. *The Plaintiffs' Allegations*

The Plaintiffs made the following allegations, among others, regarding specific business expectancies:

- Plaintiffs' cosmetic cases dropped from approximately 111 cases in 2012 to 82 cases in 2013 and 2 cases in 2014. (Am. Compl. ¶ 93);
- The actions of the Defendants caused patients to cancel their surgeries and other medical procedures with the Plaintiffs. (Am. Compl. ¶ 112);
- Loss off current patients. (Am. Compl. ¶¶ 118 & 119);
- Loss of future patients. (Am. Compl. ¶¶ 118 & 119);
- Loss of goodwill. (Am. Compl. ¶¶ 118 & 119); and
- Plaintiffs had a business expectancy in their clients/patients and future clients/patients based upon the past success of the Plaintiffs. (Am. Compl. ¶ 91).

C. *The Defendants' Arguments*

The Defendants allege the Amended Complaint simply makes "general allegations of harm to their business, which amount only to the 'generic opportunities of any successful enterprise, a type of injury that can be protected by an award of damages in a successful defamation suit.'" Document 72 at Page 5 (citing *Guettenberg v. Emery*, 41 F. Supp. 3d 61, 73 (D.D.C. 2016).

Further, the Defendants allege "[t]he expectancy of remaining in business is too general to support a tortious interference claim." Document 72 at Page 5 (citing *Mansfield v. Anesthesia Assocs.*, 2008 U.S. Dist. LEXIS 34732, *18 (E.D. Va. 2008). Therefore, the Defendants reason that "specific contracts interfered with must be alleged." Document 72 at Page 5 (citing *Jeffrey J. Nelson & Assocs. v. LePore*, 2012 U.S. Dist. LEXIS 93097 (E.D. Va. 2012)). The crux of the Defendants' position is that the Plaintiffs must identify the "identity, nature, or quantity of actual business expectancies lost." Document 72 at Page 5-6 (Citing *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705-06 (E.D. Va. 2004).

D. *Discussion of Relevant Cases*

The case law relied upon by the Defendants is inconsistent. A closer examination of the case law at issue reveals that the Defendants' Motion to Dismiss must be denied.

1. *Mansfield v. Anesthesia Assocs.*, 2008 U.S. Dist. LEXIS 34732, 2008 WL 1924029 (E.D. Va. 2008)

In *Mansfield*, a physician was accused of sexual harassment by an employee of a hospital and subsequently told he could not return to the hospital and was ultimately suspended from his anesthesia practice. *See* 2008 U.S. Dist. Lexis 34732, *2-3. The physician filed suit to recover

for tortious interference alleging "expectancy of employment with other companies for probably future economic benefit." *Id.* at 19.

The Court held that "to succeed on this claim a claimant must prove that there is a 'particular expectance which [the claimant] is reasonably certain will be realized.'" *Id.* at 18 (citing *Masco Contractor Services East, Inc. v. Beals*, 279 F. Supp. 2d 699, 710 (E.D. Va. 2003)). Further, "[t]he 'expectancy of remaining in business is too general to support a tortious interference claim.'" *Id*. The Court determined the "Plaintiff…fail[ed] to identify any specific company with which he might be employed in the future." *Id.* at 19.

    2. *Jeffrey J. Nelson & Assocs. v. LePore*, 2012 U.S. Dist. LEXIS 93097, 2012 WL 2673242 (E.D. Va. 2012)

In *Jeffrey J. Nelson*, the Defendant asserted counterclaims for tortious interference against the Plaintiffs. The Court noted the "[d]efendants have failed to allege the existence of any contractual or business relationships, other than 'contracts with numerous third parties' and 'business relations with third parties.'" 2012 U.S. Dist. LEXIS 93097, *36.

    3. *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652 (E.D. Va. 2015)

In *Goulmamine,* employees at the Defendant's pharmacy began telling the Plaintiff's patients that the pharmacy would not fill the Plaintiff's prescriptions because he was not in good standing with all regulatory and oversight bodies, had been investigated, and that he had patients die as a result of his prescriptions. 138 F. Supp. 3d 652, 657.

The Court noted that the Plaintiff had pled "interference through improper acts (defamation)…and…damages (lost patients and referrals)," but he had not "pled causation." *Id* at 672. However, the Court stated the Plaintiff "*correctly states that he need not 'provide specific examples of patients and referrals' at the 12(b)(6) stage*." *Id*. (emphasis added).

### E. *The Plaintiffs have pled more than bare, speculative assertions*

The Defendants essentially argue that the Plaintiffs must provide the exact identity, nature, and/or quantity of "actual business expectancies" lost in order to survive a 12(b)(6) Motion to Dismiss. This is simply not the case.

The defendant in *Signature Flight Support Corp. v. Landow Aviation L.P.*, 2009 U.S. Dist. LEXIS 1938 (E.D. Va. 2009), made a similar argument. In *Signature*, the defendant argued that the plaintiff's "allegations are not sufficiently specific because Plaintiff does not identify exactly which aircraft it would service and what fees it would receive for its services." 2009 U.S. Dist. LEXIS 1938, *7. The Eastern District of Virginia reasoned that the defendant's argument had no merit as "Rule 8 only requires Plaintiff to provide 'a short and plain statement,' 'not detailed factual allegations.'" *Id*. (citing Fed. R. Civ. P. 8). Further, the Court noted that "a valid business expectancy is still merely an expectancy. It need not be absolutely guaranteed." *Id*. (citing *Buffalo Wings Factory, Inc. v. Mohd*, 2007 U.S. Dist. LEXIS 91324, at *25 (E.D. Va. 2007); *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 710 (E.D. Va. 2003)). The Court found the "satisfied this element by alleging an identifiable business expectancy in the provision of FO services to transient aircraft." *Id*.

Similarly, as noted above, in *Goulamine*, the Court specifically stated the plaintiff was not required to provide "specific examples of patients and referrals at the 12(b)(6) stage." 138 F. Supp. 3d at 672.

The Plaintiffs' Amended Complaint contains allegations of identifiable lost patients, lost procedures, and lost expectancies. Additionally, the Amended Complaint alleges that the Defendants actions caused the Plaintiffs' cosmetic patient load to drop from 111 to 2. (Am.

5

Compl. ¶ 93). This meets the requisite level of specificity to survive the Defendants' Motion to Dismiss.[1]

Such assertions were not akin to the "expectancy of employment with other companies for probably future economic benefit" asserted by the plaintiff in *Mansfield*. 2008 U.S. Dist. Lexis 34732, *19. Nor was it as vague as the "'contracts with numerous third parties' and 'business relations with third parties'" alleged in *Jeffry J. Nelson*. 2012 U.S. Dist. LEXIS 93097, *36. The Plaintiffs' lost patients and potential patients are specifically identified by numerical figures in the Amended Complaint. The Federal Rules of Civil Procedure do not mandate that the names of specific patients be identified at the pleading stage.[2]

## II. THE PLAINTIFF'S HAVE ALLEGED THE DEFENDANTS HAD KNOWLEDGE OF PLAINTIFFS' BUSINESS EXPECTANCIES

Next, the Defendants argue that the Plaintiffs failed to allege the Defendants' knowledge of the Plaintiffs' specific business expectancies. However, the Amended Complaint alleges facts that demonstrated the Defendants' knowledge of the Plaintiffs' business expectancies.

*Black's Law Dictionary* defines the word "knowledge" as "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Black's Law Dictionary* (9th ed. 2009).

The Plaintiffs alleged the Defendants took various actions that demonstrated their knowledge of the Plaintiffs' business expectancies. In summary, the Amended Complaint alleged that the Defendants:

---

[1] It should also be noted that identifying specific patients may violate the Health Insurance Portability and Accountability Act of 1996 and other health privacy laws.

[2] If the Plaintiffs were unable to produce sufficient evidence of specific lost patients and expectancies in discovery, then Summary Judgment may be appropriate.

- Were aware that the Plaintiffs were a successful plastic surgeon and plastic surgery practice;

- Conspired to obtain information about the Plaintiffs from the Plaintiffs' former employees;

- Used a website alleging to be "by consumers for consumers" to specifically target the patients and potential patients of the Plaintiffs; and

- Knew posts on the website would be search engine optimized and easily viewed by the Plaintiffs' patients and potential patients.

Simply put, other than reaching the Plaintiffs' patients and potential patients, there would be no other purpose for using the website. Clearly, the Plaintiffs' allegations demonstrated "an awareness or understanding" of their business expectancies on the part of the Defendants.

Even assuming the Defendants did not have "specific knowledge" of the Plaintiffs' business expectancies, several courts have held that "[t]he defendant must have actual knowledge of the existence of the business relationship or knowledge of facts that, upon reasonable inquiry, should lead to disclosure of the existence of the contract or potential business relationship." *Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54, 62 (Va. Cir. Ct. 1997) (citing Restatement (2d) of Torts, § 766, Comment I (1977); *Meadow Ltd. Partnership v. Heritage Savings & Loan*, 639 F. Supp. 643, 651 (E.D. Va. 1986)). The Plaintiffs have clearly alleged the Defendants' knowledge of the Plaintiffs' business expectancies.

7

### III. THE PLAINTIFFS HAVE ALLEGED THE DEFENDANTS' TORTIOUS INTERFERENCE CAUSED THE PLAINTIFFS TO LOSE EXISTING PATIENTS AND FUTURE BUSINESS EXPECTANCIES

Next, the Defendants make a seemingly half-hearted argument regarding causation. However, the Plaintiffs alleged the actions of the Defendants caused the harm to the Plaintiffs.

Indeed, a plaintiff must allege "a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy." *Glass v. Glass*, 228 Va. 39, 51-52, 321 S.E.2d 69, 77 (1984). The Plaintiffs made the following allegations regarding causation:

- That the Defendants had knowledge of the Plaintiffs, their clients/patients and their business expectancies. (Am. Compl. ¶ 56);

- That the Defendants knew that Pitman was a successful plastic surgeon and had substantial income through his business, PPS. (Am. Compl. ¶ 63);

- That the Defendants saw a way to gain income through the Plaintiffs' financial success; (Am. Compl. ¶ 64);

- That the Ripoff Report posts were done with the intent to damage the Plaintiffs' financial/business interests (Am. Compl. ¶ 80); and

- That the actions of the Defendants harmed the Plaintiffs in various damaging ways. (Am. Compl. ¶ 101 (a-j).

Clearly, the Plaintiffs sufficiently properly alleged the actions of the Defendants caused the loss of the Plaintiffs' patients and business expectancies.

## IV. THE PLAINTIFFS ALLEGATIONS SATISFY THE PURPOSE OF REQUIRING A "COMPETITIVE RELATIONSHIP" FOR TORTIOUS INTERFERENCE

Next, the Defendants alleged the Plaintiffs must allege a competitive relationship between the Plaintiffs and the Defendants. Simply put, the Supreme Court of Virginia has never required that a plaintiff plead a "competitive relationship" for tortious interference. However, yet again, the Defendants overlook the purpose of requiring a "competitive relationship"; a purpose that is met by the facts alleged by the Plaintiffs.

### a. *The Plaintiffs were not required to plead a competitive relationship between themselves and the Defendants.*

The Defendants correctly argue that a line of cases from the United States District Court for the Eastern District of Virginia have found insufficient tortious interference claims where there was no competitive relationship between the parties. *See, e.g., 17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584 (E.D. Va. 2005); *Adeptech Sys., Inc. v. Federal Home Loan Mortg. Corp.*, No. 1:11CV383 LMB/JFA, 2011 U.S. Dist. LEXIS 148747 (E.D. Va. 2011); *Whitaker v. Sheild*, Civil Action No. 4:05cv130, 2006 U.S. Dist. LEXIS 101055 (E.D. Va. 2006); *see also Wenzel v. Knight*, No. 3:14-cv-432, 2015 U.S. Dist. LEXIS 70536 (E.D. Va. June 1, 2015); *Cox v. MAG Mutual Insurance Company*, Civil No. 3:14-cv-377-JAG, 2015 U.S. Dist. LEXIS 46502 (E.D. Va. 2015).

According to the *17th St. Assoc.* court, "[t]he reason that the tort of intentional interference with a business expectancy always involves a competitive relationship and allegations of direct contact with the source of the expectancy are self-evident: *they provide prima facie evidence of a motive to interfere and indicate that the interference actually took place.*" 373 F. Supp. 2d at 601 (emphasis added).

9

However, recent case law from district courts in Virginia have found that a competitive relationship is not necessary. In *Livia Props., LLC v. Jones Lang Lasalle Ams., Inc.*, 2015 U.S. Dist. LEXIS 103987, 15-16 (W.D. Va. 2015), the Western District held that "tortious interference claims usually arise between competitors, the Virginia Supreme Court has never stated that a competitive relationship between the parties is a prerequisite to a tortious interference claim like that alleged herein." (citing *Foster v. Wintergreen Real Estate Co.*, 81 Va. Cir. 353 (Va. Cir. 2010) (overruling demurrer on the ground that a competitive relationship between the party interfered with and the interferor because that element had not been adopted by the Supreme Court of Virginia). The *Livia* court went on to reason, "[a]s a court in Connecticut explained, the reasons for this are obvious:

> To hold a defendant who has tortiously interfered with another's business relations free from liability solely because the defendant has not injured a competitor is contrary to the law. . . . The lack of a competitive relationship can in no way justify unwarranted interference with another's business relations. Furthermore, a plaintiff's injuries in such a situation are no less real because they are caused by a noncompetitor.
>
> *Id.* (citing *Conrad v. Erickson*, 41 Conn. App. 243, 246, 675 A.2d 906 (Conn. 1996)).

Further, a recent case from the Eastern District interpreting the current state of Virginia law noted:

> the Plaintiff's "legal argument with respect to the tortious interference claims has not changed—they challenged then and now the Court's adoption of a "fifth unstated element to the prima facie case: a competitive relationship between the party interfered with and the interferor…[a]t the hearing on the motion to dismiss, Plaintiffs' counsel zealously urged his position based on his interpretation of Virginia caselaw…[t]he Supreme Court of Virginia has subsequently strengthened this interpretation with its somewhat cryptic invitation to take up the issue at a later date...[i]mportantly, it did not reject his interpretation.

*AdvanFort Co. v. Int'l Registries, Inc.*, 2015 U.S. Dist. LEXIS 90912 (E.D. Va. July 13, 2015) (citing *Schaecher v. Bouffault*, 290 Va. 83 (Va. 2015)).

Clearly, the requirement of a competitive relationship is not established under Virginia law. The most recent case law on the subject suggest a back track from the "fifth unofficial element." As the courts have reasoned above, it is inexplicable that "interferors" can escape liability for tortious interference simply because they are not in the same business field as a victim. This Court should adopt the sound reasoning of set forth in *Livia* and *AdvanFort* and reject the Defendants' attempt to establish an unsupported "fifth element" for a claim of tortious interference.

      b. *Even if the Plaintiffs were required to plead a competitive relationship, the Plaintiffs have established one.*

While the Plaintiffs and Defendants are not in the same field, they are in a competitive relationship that meet the logic behind *17th Street Associates* and its progeny. In *17th Street Associates*, the district court explained, "[t]he reason that the tort of intentional interference with a business expectancy always involves a competitive relationship and allegations of direct contact with the source of the expectancy are self-evident: *they provide prima facie evidence of a motive to interfere and indicate that the interference actually took place*." 373 F. Supp. 2d at 601 (emphasis added).

In this case, each of the Defendants have an established reason for interfering with the Plaintiffs' business interests. Defendants Richter, B. Richter, A. Richter, and to a lesser degree Meade, Magedson, and Xcentric are attempting to secure Richter's freedom by attempting to force Pitman to recant his murder trial testimony. Further, Defendants Meade, Magedson, and Xcentric have attempted to extort money from the Plaintiffs. Therefore, the indicia of a competitive relationship, even if it is not a business relationship, exist in this case. The Plaintiffs have alleged the motive to interfere on the part of each of the Defendants. Therefore, the

Plaintiffs argue they have made allegations that meet the purpose "fifth unofficial element" of tortious interference.

## V. PITMAN AND MAGEDSON ARE PROPER PARTIES

### a. *Pitman, individually, may recover for tortious interference*

Next, the Defendants argue that Pitman, as the sole owner of PPS, cannot recover for the tortious interference with PPS's business expectancies. ECF No. 72 at 8. However, the Defendants' argument must fail as they personally damaged Pitman.

In *Semida*, the Fourth Circuit did state an individual cannot sue in an individual capacity for tortious interference with a corporation's contract, even if he is the sole shareholder of the corporation. 863 F.2d at 1161. However, the improper conduct of the defendant did not give rise a distinct personal injury to the non-corporate plaintiff. *Id*. However, an individual may have a cause of action for acts which injure both a corporation and its individual owner. *A.T. Massey Coal Co. v. Harman Dev. Corp. (In re Sovereign Coal Sales, Inc.)*, 2000 Bankr. LEXIS 2092, *15-16 (Bankr. W.D. Va. 2000) (citing *Howard v. Haddad*, 916 F.2d 167 (4th Cir. 1990)); *see also Amzura Enters. v. Ratcher,* 18 Fed. Appx. 95, 108, 2001 U.S. App. LEXIS 19988, *32 (4th Cir. 2001).

In tort actions, a Plaintiff may recover for damages such as "injuries to the plaintiff's reputation, injuries to, or the loss of, commercial credit, and injuries to financial or business standing…where they are the natural and proximate results of the defendant's wrongful acts." *United Const. Workers v. Laburnum Const. Corp.*, 194 Va. 872, 893, 75 S.E.2d 694, 708 (Va. 1953). Further, "a presumption of at least nominal damage follows from proof of a legal wrong." *Id; see also Liberty Mut. Fire Ins. Co. v. JT Walker Indus.*, 554 Fed. Appx. 176, 190 (4th Cir. 2014) (noting where pleadings allege and evidence proves a willful invasion or infringement of a right, courts presume nominal damages). "[N]ominal damages need not be

specifically pleaded where a party alleges a claim for general damages; the general damage allegation sufficiently encompasses nominal damages." *Liberty Mut. Fire Ins. Co.*, 554 Fed. Appx. at 190 (citing *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992)). Further, [w]here a jury finds a willful or reckless invasion of a legal right, a court presumes that nominal actual damages are merged into a punitive damage award." *Id* (citing *Hinson v. A. T. Sistare Constr. Co.*, 236 S.C. 125, 113 S.E.2d 341, 345 (S.C. 1960)).

Unlike the individual plaintiffs in the cases cited by the Defendants, Pitman has alleged a distinct personal injury as a result of the Defendants' intentional acts. The Amended Complaint alleges that the majority of the Defendants' posts on Ripoff Report were directed at Pitman individually. *See e.g.* (Am. Compl. ¶¶ 75-77). Based on the tortious interference of the Defendants, Pitman may recover for injuries to his reputation and his financial or business standing, which are the harms Pitman alleged. *See* (Am. Compl. ¶¶ 90, 92, 101 (h-j). Further, based on the Defendants' intentional acts, Pitman can claim at least nominal damages and thus can recover punitive damages. Therefore, Pitman has standing to pursue a cause of action for tortious interference against the Defendants.

     *b.* <u>*Magedson took an "independent personal stake" in the Defendants' actions*</u>

The Defendants argue that Magedson is not a proper party because the Plaintiffs failed to allege Magedson acted outside the scope of his official capacity at Xcentric. ECF No. 72 at 14. Further, the Defendants state that Magedson, as an agent of Xcentric, cannot conspire with Xcentric based on the intracorporate immunity doctrine. EFC No. 72 at 14. However, the Plaintiffs have alleged that Magedson took an independent personal stake in the conspiracy. Therefore, he is a proper party.

In addressing the intracorporate immunity doctrine, courts have held that "pursuant to Virginia law, the doctrine does not apply when an agent of the corporation has an 'independent

13

personal stake in achieving the corporation's illegal objective.'" *Selman v. American Sports Underwriters, Inc.*, 697 F. Supp. 225, 239 (W.D. Va. 1988); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 151 F. Supp. 2d 723, 2001 U.S. Dist. LEXIS 10348 (W.D. Va. 2001). The "personal stake" must be a "personal benefit from the conspiracy, a benefit wholly separable from the more general and indirect corporate benefit always present under the circumstances surrounding virtually any alleged corporate conspiracy." *Id.*

In the Amended Complaint, the Plaintiffs made the following allegations, among others, regarding Magedson's "independent personal stake" in the conspiracy:

- He took a personal interest in Tracey Richter's trial and employed Meade to assist in attempting to exonerate Richter. (Am. Compl. ¶ 60);

- He used information collected from other Defendants on the Ripoff Report to influence witnesses to change their testimony. (Am. Compl. ¶ 60);

- That he sought information on the Plaintiffs from other Defendants. (Am. Compl. ¶ 61); and

- That he approved the posts concerning the Plaintiffs. (Am. Compl. ¶ 67).

Because Magedson had an interest in the conspiracy separate from that of Xcentric, he is an appropriate party to this action.

## VI. THE PLAINTIFFS HAVE PLED AN INTENTIONAL HARM TO A BUSINESS AND A BUSINESS OWNER CAUSED BY A CONSPIRACY BY THE DEFENDANTS

The business conspiracy statute requires the alleged injury to be to a business or *a business owner*, not to an individual's employment interests. *Cox v. MAG Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 46502 (E.D. Va. 2015); *see also* Virginia Code § 18.2-500 ("[a]ny person who

shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor…").

   A. *Discussion of cases cited by the Defendants*

Again, the Plaintiffs believe that it would be useful to discuss the facts of various cases cited by the Defendant to explore the factual situations the various Courts were considering compared to the allegations made in this case.

   1. *Inman v. Klockner-Petaplast of Am., Inc.*, 467 F. Supp. 2d 642 (W.D. Va. 2006)

In *Inman*, an employee sued his employer under the business conspiracy statute after being terminated alleging harm to his professional reputation and his stock ownership in his former employer. 467 F. Supp. 2d at 644. The plaintiff was required to sell his shares of stock upon termination. *Id.*

Ultimately, the court held that the "[p]laintiff's professional reputation and stock ownership in his own company, however, are employment interests, not business interests." *Id.* at 654.

   2. *Mansfield*, 2008 U.S. Dist. Lexis 34732

In *Mansfield*, the plaintiff-physician was terminated from his position with an anesthesiology practice. *Id.* at 1. In his Complaint, the plaintiff's "claimed injuries are the termination of his employment with Anesthesia Associates and Inova and the potential difficulty he faces in obtaining future employment with another hospital or anesthesiology group." *Id.* at 10.

Citing *Inman,* the court stated "an individual's 'professional reputation and stock ownership in his own company' have been found to be employment interests that fall outside the scope of the statutes." *Mansfield*, 2008 U.S. Dist. Lexis 34732, *9. The court held that the

15

language in the plaintiff's complaint "plainly indicates that Plaintiff is seeking recovery under Va. Code §§ 18.2-499 and -500 for injury to his employment relationship with Anesthesia Associates and Inova - not to his business." *Id.* at 10.

3. *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308 (4th Cir. 2012)

The Defendants correctly stated that the *Shirvinski* court noted that "Virginia's business conspiracy statute was not designed to provide treble damages for defamation suits cloaked as conspiracy claims." *Shirvinski,* 673 F.3d at 321.

However, in *Shirvinski*, the Fourth Circuit specifically noted that the plaintiff "neither owned a company, did business as a separate organization, nor had a separate tax identification number for his contractor status…Thus, appellant suffered damage only to his personal employment prospects." *Id*.

B. *Each of the above cases establishes, in part, that the Motion to Dismiss should be denied*

Unlike the Defendants in *Inman*, *Mansfield*, and *Shirvinski*, Pitman owned and operated PPS. Pitman's status as a business owner was more similar to the plaintiff in *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 765-766 (E.D. Va. Jan. 11, 2016). In that case, the court discussed a plaintiff-attorney who operated a solo practice. The *Daniczek* court distinguished the plaintiff's business conspiracy claim from those involving injuries to personal reputation and interest in employment noting that the plaintiff:

> appears to be a solo practitioner, meaning that it is impossible to damage her reputation without injuring her business. Second, Danjczek's Complaint does not merely state that Mahoney and Spencer injured her reputation: she states that they directly injured her business by having her removed from the Court Appointed Attorney list. (Compl. ¶¶ 35, 40). Because the Complaint alleges that Spencer and Mahoney worked together on this (Compl. ¶ 40), Danjczek has pled sufficient facts to state a claim that Spencer and Mahoney combined for the purpose of willfully and maliciously injuring Danjczek in her business, either because reputation and

16

business are inextricable for a solo practitioner or because removing Danjczek from the court appointed attorney list directly injured her business.

*Id.*

Much like the plaintiff in *Daniczek*, Pitman was the sole owner and sole physician employed by PPS. Therefore, the harm done to Pitman was not to his "employment interests", but rather his business. Therefore, both Pitman and PPS are entitled to recover under the Virginia business conspiracy statutes.

**VII. THE STATUTE OF LIMITATIONS FOR TORTIOUS INTERFERENCE IS FIVE YEARS BECAUSE IT IS A HARM TO A PROPERTY INTEREST**

Finally, the Defendants argued that the Plaintiffs may not assert a claim for tortious interference more than one year after the defamation constituting the alleged improper methods. ECF No. 72 at 17. In support of the Defendants' contention, they cited case law from other jurisdictions. *See* ECF No. 72 at 17. This ignores Virginia law.

However, the Supreme Court of Virginia specifically addressed the statute of limitations for tortious interference in *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 216, 754 S.E.2d 313 (2014). The focus in *Dunlap* was on the harm caused to a property interest.

In *Dunlap*, the Supreme Court of Virginia noted "one of the elements of a claim for tortious interference with either a contract or business expectancy requires intentional interference inducing or causing a breach or termination of the contractual relationship or business expectancy. *Id*. at 221. Such interference is directed at and injures a property right, i.e., the right to performance of a contract and to reap profits and benefits not only from the contract but also from expected future contracts or otherwise advantageous business relationships. Id. (citing *Pure Milk Ass'n v. Kraft Foods Co.*, 8 Ill. App. 2d 102, 130 N.E.2d 765, 772 (Ill. App. Ct. 1955) ("'[T]he right to perform a contract and to reap the profits resulting from such performance . . . are property rights which entitle each party to protection, and to seek compensation by action

17

in tort for any injuries to such contract.'"); *Johnson v. Gustafson*, 201 Minn. 629, 277 N.W. 252, 254 (Minn. 1938) ("[T]he interest in a contract being a property right, a party thereto has a right of action against persons who are by their conduct substantially interfering with the performance thereof."); *Barr v. Essex Trades Council*, 53 N.J. Eq. 101, 30 A. 881, 885 (N.J. Ch. 1894) ("A man's business is [his] property."); *Carolina Overall Corp. v. East Linen Supply, Inc.*, 8 N.C. App. 528, 174 S.E.2d 659, 661 (N.C. Ct. App. 1970) ("The theory of the doctrine which permits recovery for the tortious interference with a contract is that the right to the performance of a contract and to reap the profits therefrom are property rights which entitle each party to protection and to seek compensation by action in court for an injury to such contract.")).

Therefore, the Court held that "the five-year statute of limitations in Code § 8.01-243(B) applies to both tortious interference with contract and tortious interference with business expectancy." The Court simply did not equivocate from the holding that the statute of limitations was based on the harm to a property interest. Therefore, the Defendants' argument must fail.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion to Dismiss for Failure to State a Claim. Should the Court find it necessary, the Plaintiffs would request leave to amend or other relief to which the Court deems necessary and proper to permit the Plaintiffs to assert their claims as justice so demands.

    Respectfully submitted,

    JOHN M. PITMAN, III, and
    PENINSULA PLASTIC SURGERY
    CENTER, LTD

    By: /s/    Aaron Balla Houchens
        Of Counsel

Aaron B. Houchens, Esq. (VSB #80489)
STANLEY & HOUCHENS, LLC
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
540-721-6028 (telephone)
540-721-6405 (facsimile)
ahouchens@shg-law.com

Stephen M. Smith, Esq. (VSB #14362)
Seth D. Scott, Esq. (VSB #80907)
David B. Holt, Esq. (VSB #65564)
THE SMITH LAW CENTER
2100 Kecoughtan Road
Hampton, Virginia 23661
757-244-7000 (telephone)
757-245-7740 (facsimile)
ssmith@braininjurylawcenter.com
sscott@attorneys4injured.com
dholt@ attorneys4injured.com

*Counsel for Plaintiffs John M. Pitman, III and Peninsula Plastic Surgery Center, LTD.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David A. Warrington, Esq.
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Phone: (703) 647-5926
Fax: (703) 647-5966
david.warrington@leclairryan.com
    *Counsel for Defendant Xcentric Ventures, LLC and Edward Magedson*

Jesse R. Binnall, Esq.
Louise T. Gitcheva, Esq.
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, Virginia 22314
Tel: (703) 888-1930
jbinnall@harveybinnall.com
lgitcheva@harveybinnall.com
    *Counsel for Defendants Anna Richter, Bert Pitman and Tracey Richter*

/s/   Aaron Balla Houchens
Aaron B. Houchens, Esq. (VSB #80489)
STANLEY & HOUCHENS, LLC
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
540-721-6028 (telephone)
540-721-6405 (facsimile)
ahouchens@shg-law.com